# Weisfield *v.* Beale, Appellant.

*Mines and mining—Mining privileges on surface—Trespass quare clausum fregit—Actions—Practice, C. P.*

1. Where it appears that the defendant in an action of trespass quare clausum fregit owns coal under the surface of land, without reversionary rights but including mining privileges as to the surface with a right to lay a tram thereon, and where it also appears that the plaintiff purchased the surface with full knowledge of defendant's rights, and of the existence of the tram, and the plaintiff has never been in possession of the portion of the surface covered by the tram, the latter cannot maintain the action on the ground that the defendant hauled coal from other lands over the tram constructed on the surface.

2. The plaintiff in an action of trespass quare clausum fregit cannot recover even nominal damages where he has never had possession nor the right of possession of the locus in quo.

*Bankruptcy—Trespass—Damages in trespass without malice.*

3. Damages in trespass without malice or willfulness are dischargable in bankruptcy.

Argued May 9, 1910. Appeal, No. 133, April T., 1910, by defendant, from judgment of C. P. Armstrong Co., Sept. T., 1908, No. 168, on verdict for plaintiff in case of C. A. Weisfield v. Joseph G. Beale. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Reversed.

Trespass quare clausum fregit.  Before PATTON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1.00.  Defendant appealed.

*Error assigned* among others was refusal of binding instructions for defendant.

*H. B. Wassell* and *C. E. Harrington,* for appellant.—Trespass quare clausum fregit cannot be maintained if the defendant was in possession of the locus in quo when the alleged trespass was committed, and had been in possession for some years previous thereto: Collins v. Beatty, 148 Pa. 65; Busch v. Calhoun, 14 Pa. Superior Ct. 578.

An unliquidated claim which might have been liquidated and proved under sec. 63b is discharged: Loveland on Bankruptcy (2d ed.), 762; In re Hilton, 104 Fed. Repr. 981, 4 A. B. R. 774; Collier on Bankruptcy (7th ed.), 700; Walser v. Gottleib, 12 Luz. Leg. Reg. Repr. 121.

*Harry C. Golden,* for appellee.—In the case at bar, the plaintiff showed that the land was unimproved, and showed a legal title in himself, beginning with a patent from the commonwealth.  This was sufficient to show a constructive possession, and such possession is sufficient to sustain an action of trespass quare clausum fregit: Wilkinson v. Connell, 158 Pa. 126; Hess v. Sutton, 33 Pa. Superior Ct. 530; Olewine v. Messmore, 128 Pa. 470.

The claim was not barred by bankruptcy proceedings: Dunbar v. Dunbar, 10 A. B. R. 139; In re John Wigmore & Sons Co., 10 A. B. R. 661; In re United Button Co., 15 A. B. R. 390; In re Crescent Lumber Co., 19 A. B. R. 112; Brown & Adams v. Button Co., 17 A. B. R. 565.

OPINION BY MORRISON, J., October 10, 1910:

By deed dated February 19, 1859, recorded the same

date, in Armstrong county, Peter Schaffer sold and conveyed to Thomas Donley, "all the cannel, bituminous and other coals in or under all the land on which the said party of the first part now lives," fully describing it, situate in Armstrong county, Pennsylvania, and said deed contained, inter alia, the following: "also free ingress and free egress over and through the land of the said party of the first part, so as to allow the said party of the second part, his heirs and assigns, to take out and carry off the said coal or coals as he or they may consider necessary, with the right and privilege to use the entries for any purpose. And to erect, make and keep in repair such roads, scaffolds and other fixtures as he or they may desire to erect, repair or remove from time to time."

It is conceded that said tract of land contained 200 acres and that said conveyance worked a severance of the coal from the surface of said land. In short, under the authorities, the said conveyance vested in the grantee therein an estate in land, as to the coal therein mentioned. At the trial it was proved, and is now a conceded fact, that the coal rights and privileges created by said deed became vested by deed dated September 2, 1898, and other conveyances, in the Aladdin Coal Company, Limited, and the defendant Joseph G. Beale. That the defendant went into possession of the said mineral estate several years before the plaintiff secured any interest in the surface of said tract of land. The surface of part of the original Donley tract became vested in Solomon Wolfe in 1871, and he having died, the land was partitioned in 1906, and at the master's sale, C. A. Weisfield, the plaintiff, by a deed dated June 29, 1906, purchased purpart "M" of said surface, containing eight acres and 150 perches. The defendant had opened the mine and constructed, as he had a lawful right to do, a tram or entryway from the pit mouth on the side hill down across the said surface land for a distance of about fifteen rods to his tipple, near the railroad, for the purpose of trans-

porting the coal from the pit opening to said tipple. A considerable quantity of coal had been mined and removed from the Donley tract, otherwise designated as the Solomon Wolfe tract, over said tramway to said tipple. In removing coal from the Donley tract the defendant had made certain openings and gangways leading through the coal in said tract so that these openings or passageways extended to other coal belonging to the defendant underlying land adjoining the said Donley tract. No question is raised in this case about the right of the defendant to construct said elevated tram or entryway from the pit mouth to the tipple and to transport all the coal mined from the Donley tract over the same. It is not contended that the defendant took possession of or occupied any more land for his elevated tramway than was necessary; nor is it contended that the defendant was guilty of any trespass as to the plaintiff's land in respect to the erection and operation of said tramway in so far as it related exclusively to the removal of the coal from the Donley tract to the tipple. But, incidentally, the defendant brought coal from the adjoining tract through the openings and gangways in the Donley tract and transported said coal from the pit mouth over the said tramway to the said tipple and it is for so doing that the learned court below gave a binding instruction to the jury to find a verdict in favor of the plaintiff for nominal damages in this action of trespass.

The declaration is in trespass quare clausum fregit, pure and simple. It contains no averment of damages to plaintiff's reversionary right, if any such right existed. The first charge in the declaration is, "that continuously, since June 29, 1906, and until the present time, the defendant, Joseph G. Beale, through his agents and employees, has trespassed upon the aforesaid close of the plaintiff, by emptying the waste from the defendant's coal mines into certain vacant chambers under the aforesaid close or tract of land belonging to the plaintiff." Then averring damages on this account in the sum of

$1,000. But this averment of the declaration was not sustained by any evidence and the learned court did not submit that complaint to the jury.

The only other averment in the declaration upon which the plaintiff could contend for a recovery is, "That the defendant, since June 29, 1906, and until the present time, has continuously been hauling coal over the plain-. tiff's land, without any legal authority or right so to do. The plaintiff estimates the damage from such unlawful hauling of coal over his land by the defendant at $700, and therefore claims damages in this amount from .the defendant." The learned court below limited the plaintiff's right of recovery to nominal damages for what he conceived to be a technical trespass by the defendant in transporting coal over said tramway, mined from land adjoining the Donley or Wolfe tract.

The undisputed evidence shows that the defendant was lawfully in the actual and exclusive possession of the strip of land on which his tramway rested for several years before the plaintiff acquired any interest in the locus in quo. It is true that this tramway was constructed part of its length over purpart "M" which plaintiff acquired title to by the deed of June 29, 1906, above referred to. But it was proved, and is conceded, that the plaintiff purchased said purpart "M" with full knowledge of the defendant's coal operations and his rights in respect thereto, and with full knowledge that defendant's tramway rested in part upon a portion of said purpart. The uncontradicted evidence showed that the plaintiff was never in possession of so much of said purpart as was occupied by said tramway, nor had he the right to the possession of the same, because the defendant was lawfully in possession thereof for the purpose of transporting the coal from the Donley tract to the tipple and he was constantly using the tramway and his lawful possession necessarily and effectually excluded the plaintiff from acquiring possession of so much of purpart "M" as supported said tramway.

Upon this state of the case the learned counsel for defendant presented their second point (tenth assignment of error), to wit: "Under the pleadings and evidence in the case, trespass quare clausum fregit cannot be maintained, the defendant being in possession of the locus in quo when the alleged trespass was committed, and has been in possession for many years previous thereto, and the verdict must be for the defendant. *Answer:* That point is refused." We think this point ought to have been affirmed for the reasons stated therein as well as those we have already expressed. How a plaintiff can be allowed to recover, even nominal damages, in an action of trespass quare clausum fregit in a case where he never had possession nor the right of possession of the locus in quo, we are not able to understand.

The portion of purpart "M" occupied by defendant's tram or entryway was about twelve feet wide and extended about 200 feet in length over said purpart "M." As we have seen when plaintiff purchased this purpart the defendant was in the actual, open and exclusive possession of this strip of land with his tramway. Another fact to be considered in this connection is that when the plaintiff purchased said purpart the defendant was mining and transporting coal over said tramway from the Donley tract, and, therefore, the plaintiff could not and did not acquire such possession of the locus in quo as would entitle him to recover in trespass quare clausum fregit.

In Collins v. Beatty, 148 Pa. 65, the Supreme Court said: "We do not think the court below erred in giving the jury a binding instruction in favor of the defendant. The action was trespass quare clausum fregit, and the plea 'not guilty.' The evidence showed the defendant to have been in possession of the locus in quo at the time the alleged trespass was committed, and for some years before. Under such circumstances the action of trespass cannot be maintained."

In Busch v. Calhoun, 14 Pa. Superior Ct. 578, we held

as expressed in the syllabus: "Trespass quare clausum fregit cannot be maintained if the defendant was in possession of the locus in quo when the alleged trespass was committed, and had been in possession for some years previous thereto.

"The act of 1887, while abolishing certain distinctions in actions makes no change as to the particularity with which matters of substance, indispensable to an intelligent and just judgment between the parties, must be set out.  Under the Act of May 25, 1887, P. L. 271, trespass will lie for the use and occupation of premises, the possession of which was not in the plaintiff during the period sued for but the cause of action must be adequately set out in the pleading."

There is nothing in the declaration raising the question of the right of the plaintiff, although not in possession, to recover damages for injury to his reversionary right, if any such right should exist after all of the coal had been mined in the Donley tract, and therefore that question is not before us.  The plaintiff was bound to recover, under his declaration, in trespass quare clausum fregit or not at all.

The learned counsel for the plaintiff cites and relies on some of the well-known cases to the effect that where the trespass is committed on unimproved land, not in the actual possession of anyone, the person having a good title to such land has a constructive possession and can recover in trespass quare clausum fregit against a wrongdoer.  The cases cited are Wilkinson v. Connell, 158 Pa. 126; Hess v. Sutton, 33 Pa. Superior Ct. 530; Olewine v. Messmore, 128 Pa. 470.  But on the facts of the present case showing the defendant in the actual possession of the locus in quo at the time of the alleged trespass, those cases, and others in the same line, are strongly against the contention of plaintiff's counsel.  It is idle to argue that the plaintiff can recover under said authorities in a case where the defendant overwhelmingly proved by undisputed evidence his actual and undisputed possession

of the locus in quo during all of the time the alleged acts of trespass were committed.

But there is another reason why the court should have given a binding instruction in favor of the defendant. An involuntary petition in bankruptcy was filed against the defendant on February 19, 1908. He was adjudicated a bankrupt on May 23, 1908, and discharged on May 26, 1909. His discharge was pleaded at the trial. This suit was instituted on August 10, 1908, to recover for alleged trespass from June 29, 1906, to February 19, 1908. At the time suit was brought the trustee in bankruptcy was in possession of the locus in quo and operating the Aladdin Coal Works. This question was squarely raised at the trial by defendant's seventh point (fourteenth assignment of error), to wit: "It appearing from the testimony the defendant was an adjudicated bankrupt at the inception of the suit, undergoing bankruptcy proceedings; and it further appearing from the evidence that there was no willful or malicious injury to the property of the plaintiff by the defendant, the claim of the plaintiff, if any, is a claim provable only against the estate of the defendant in bankruptcy at No. 3,981 western district of Pennsylvania, which is evidenced by the defendant's discharge in bankruptcy; the plaintiff's case, therefore, cannot be maintained in the present form and the verdict must be for the defendant." The court refused this point but reserved the right to enter judgment for the defendant non obstante veredicto. The defendant's counsel further moved for a binding instruction in favor of the defendant (fifteenth assignment of error) on the same ground, but the court overruled this motion and sealed a bill of exceptions for the defendant.

We are not able to discover any sufficient reason why the fourteenth and fifteenth assignments should not be sustained. We think if the plaintiff had any claim for damages it should have been proved and liquidated as a claim in the bankruptcy proceeding. We think it immaterial that the plaintiff's claim was not liquidated and in

the absence of a willful and malicious trespass the bankrupt's discharge was a bar to a recovery. There is absolutely no evidence of a willful and malicious trespass, nor is there any evidence that the defendant by transporting coal from an adjoining tract, over the tramway from the pit mouth on the Donley tract to the tipple, did any substantial injury to the plaintiff.

In Quaker City Watch Co. v. Lamoreaux, 21 Pa. Superior Ct. 493, we held as follows: "The debts not affected by discharge in bankruptcy are enumerated in section 17, chapter 3, of the act of congress of July 1, 1898, wherein it is provided, subdivision 2: 'Judgments in actions for fraud to obtain property by false pretenses, or false representations, or for wilful and malicious injury to the person or property of another,' " etc.

An unliquidated claim which might have been liquidated and proved under sec. 63b, is discharged: Loveland on Bankruptcy (2d ed.), 762; In re Hilton, 104 Fed. Repr. 981; 4 A. B. R. 774; Collier on Bankruptcy (7th ed.), 700. In Shattuck v. Haworth, 91 Pa. 449, the Supreme Court held: "That the word 'fraud,' as used in the 33d section of the Bankrupt Law of 1867, which provides that 'no debt created by the fraud or embezzlement of the bankrupt or by defalcation of a public officer or while acting in a fiduciary capacity, shall be discharged under this act,' means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without bad faith or immorality." While that case is not precisely in point, yet we think the principle is applicable to the present case, because to prevent the plaintiff's claim from being discharged in bankruptcy the onus was on him to show willful and malicious injuries to his property and this we think he utterly failed to do and it ought not to be assumed that there was willfulness or malice where it clearly appears that the defendant was acting under a color or claim of right.

Whether the defendant had the right or not to trans-

port coal from the adjoining tract over the said tramway is immaterial because of the absence of any willful or malicious trespass. Moreover, the language contained in the Donley deed of February 18, 1859, "With the right and privilege to use the entries for any purpose," tends strongly to negative the idea that the defendant committed any willful and malicious trespass.

It was proved at the trial, and appears to be now conceded, that a considerable portion of the coal in the Donley tract had not been mined at the date of the trial, and, therefore, it seems clear that up till that time, at least, the defendant and those holding under the same title, under which he operated, had a clear right to the possession and use of said tramway over the surface of the Donley tract, at least for the purpose of transporting the coal from said tract.

After the learned court had refused the defendant's points above quoted and directed a verdict in favor of the plaintiff, the learned counsel for the defendant regularly moved the court to enter judgment in favor of the defendant non obstante veredicto, upon the reserved questions, as well as upon the whole record, and on the point requesting binding instructions for the defendant; and to direct the stenographer to transcribe the whole record and notes of testimony taken at the trial. This motion was entertained by the court and a rule to show cause granted thereon. Subsequently, on November 30, 1909, the court filed an opinion which contained the following: "And now, November 30, 1909, motion for a new trial and the motion for judgment non obstante veredicto are both refused and judgment is now directed to be entered on the verdict on the payment of the jury fee." On the same day defendant's counsel excepted to this opinion and decree and the court sealed a bill of exceptions. On December 31, 1909, judgment was entered on the verdict in favor of the plaintiff.

The refusal of the judgment for defendant non obstante veredicto is raised by the first assignment of error.

We sustain the first, fourteenth and fifteenth assignments of error and the judgment is reversed, and judgment is now here granted in favor of the defendant non obstante veredicto, with costs of suit, including the costs of this appeal.